[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a limited contested divorce tried before the court at the New Haven Judicial District. The allegations of the complaint are that the plaintiff's maiden name was Ruth D'Agostino. She and the defendant were married on June 1, 1986 in Hartford, and resided in the State of Connecticut for sufficient time to confer jurisdiction on this court. The parties had two (2) children issue of their marriage, Alexander Robles, born October 15, 1987 and Julie Elizabeth Robles, born January 24, 1989. Neither party has received municipal or state assistance and the marriage of the parties is alleged to have broken down irretrievably.
The allegations of the complaint are found to have been proven. The testimony further shows that the parties met in 1985. At the time of their meeting, the plaintiff was pursuing a career in opera. She had been educated at the Julliard School of Music and was engaged in further education and training as a singer. At the time of their meeting, the defendant was employed by the Red Cross as a director. He then went on to several different jobs of an administrative/executive nature. The plaintiff had become involved in the field of title searches and had worked in that capacity part-time and full-time during different times in the CT Page 2035 marriage. In approximately 1989 or 1990, when the defendant had become unemployed, the plaintiff pursued title searching on a full-time basis. Upon the marriage of the parties, the plaintiff dedicated herself to her children and to her husband's career. Her aspirations to be an opera singer fell by the wayside in that process.
The plaintiff testified, and the defendant confirmed, that Mr. Robles had developed an interest in Albert Schweitzer at a very young age. That interest ultimately grew into what was described as a "passion" which he continued to pursue. In 1990, the defendant, with the help of the plaintiff, planned a "colloquium" at the United Nations in New York in order to launch what would eventually become the Albert Schweitzer Institute for the Humanities. That event was successful and eventually led to a substantial private donation to start the Institute. At or near the same time, the parties purchased their first home which was a condominium in Meriden. They received some help from the plaintiff's parents in garnering a down payment. The plaintiff's parents helped the parties frequently and substantially during the course of the marriage. During that time the plaintiff was still working in the field of title searching, and the defendant was continuing to develop the Albert Schweitzer Institute.
The parties eventually moved to a single family home in Wallingford. The defendant affiliated the Institute with Quinnipiac College. Subsequent to its affiliation, the defendant continued in his efforts to expand the work of the Institute. That effort included a considerable amount of entertaining, invitations to lecturers, fund raising, and related events. The plaintiff indicates that she was active in those efforts, particularly with entertainment for the benefit of the Institute. The entertainment eventually led to greater needs of the parties in terms of the size of their home, and the housing of the "collection". The collection is described in greater detail below. Perhaps more significantly, the success of the Institute led to increased travel and increased demands upon the defendant which had their effect both upon the relationship of the parties and the relationship of the defendant with the minor children. The plaintiff describes that from 1994 until the separation of the parties the defendant traveled constantly. His travel was primarily to Europe. Around that time, he began to isolate her from the workings and details of the Institute.
From approximately 1994 to 1998, the relationship of the CT Page 2036 parties continued to deteriorate. The plaintiff describes the defendant's behavior as increasingly hostile to her and demeaning. She also describes the defendant became intolerant of the children and increasingly temperamental. It was her opinion that the demands of his work became primary and the place of his family became secondary.
On or about July of 1988, the plaintiff indicates that she discovered that the defendant had a relationship with another woman. That discovery was followed by her attempts to salvage the marriage, including marriage counseling which was unsuccessful. The defendant moved from the family home at the end of September 1998. The move was followed by some overtures at reconciliation, but, for all intents and purposes the relationship had dissolved at that time.
At present, the plaintiff is employed as the title coordinator for First American Title Insurance Company. In addition, she works part-time as a tutor. Her gross income is approximately $50,000.00 per annum. The assets of the parties are spelled out in a straightforward manner on their financial affidavits which have been submitted to the court and are date stamped as of January 14, 2000. The only values that are in dispute are the values attributed to the furniture and miscellaneous items located in the house, and the Albert Schweitzer "collection".
As to the defendant, Mr. Harold Robles indicates that he was born in Surinam, South America, and then moved to Holland. He came to the United States in 1980. His education is through high school, and has the equivalent of a MBA degree in public administration. In addition, he has received an Honorary Doctorate degree from Albertus Magnus. He has worked for the Red Cross as previously noted in several capacities. He has also worked in international marketing for a number of companies which he testified to during the course of the trial. He did have sporadic periods of unemployment which were not significant in length. This is his third marriage. He has one child from his first marriage, a son who was born in 1974 and currently lives in Switzerland. Mr. Robles confirms that when he met his wife, she was very involved in developing her opera career. He claims to have been supportive of that career. He also admits that initially, he did not want children. Mr. Robles states that his wife knew having children would end her career as an opera singer. He, on one hand, admits some shortcomings as a parent, and on the other hand testified that his relationship with his CT Page 2037 children was "perfect".
Mr. Robles verified the plaintiff's testimony as to his interest as a youngster in Albert Schweitzer. He also indicates that he had met Albert Schweitzer when he was eleven, that he went to Africa as a young man of twenty-one or twenty-two, and that he had met Albert Schweitzer's daughter.
Mr. Robles had accumulated a portion of the Albert Schweitzer "collection" prior to his arrival in the United States in 1980. He had formed the Albert Schweitzer Foundation in 1984 or 1985, and that Foundation eventually became the present Institute. Mr. Robles described the history of the Foundation again from its inception in 1990 through the present time. He confirms that in 1994 he began to travel each month on a constant basis. He also confirms that he was making $125,00.00 per annum as his salary.
Mr. Robles indicates that he was forced to resign from the Institute in 1998. His recollection of the incident is that Mrs. Robles reported him for having had inappropriate contact with a student at the Choate Rosemary School. Mr. Robles indicates that he resigned for the sake of the Institute and to protect the name of the Institute. His testimony was directly contradicted by that of the plaintiff, and more impartially, by that of Mr. Edward Shanahan, the Headmaster at Choate Rosemary Hall School. Mr. Shanahan testified that he received the complaint, directly undertook an investigation, and reports speaking to the parties involved, including the complaining student. As a result, he contacted the chairman of the Albert Schweitzer Board and indicated that they would not allow Mr. Robles on the Choate campus. It was that set of circumstances which led to Mr. Robles' resignation. While it may be unclear as to whether the board would have discharged him, the effect is the same. Certainly, one could reach no conclusion other than it was Mr. Robles' own action which put this series of events into motion, leading in turn to the inevitable outcome. After his resignation, Mr. Robles was paid his regular salary until March of 1999. Since March of 1999, he has been essentially unemployed depending on some money lent to him by his parents and also upon his new girlfriend who has offered him employment paying approximately $180.00 per week.
Mr. Robles claims that he has made limited efforts to find work in the United States by reason of his belief that the incident forcing his resignation from the Foundation would prevent him from finding such work. In addition, he has sent resumes and CT Page 2038 inquiries to a number of companies in Europe, none of which have yielded positive results.
Mr. Robles testified that the breakdown of the marriage began when they moved to their new home and the plaintiff became obsessed with the house. He also testified that his wife's behavior changed in terms of excess drinking and smoking. Mr. Robles indicates that the relationship he has with he present girlfriend was not the cause of the breakup since that did not occur until after he was served papers. Those claims are not credible.
There is a very substantial disagreement as to the earning capacity of the defendant, and the appropriate basis for financial orders. Based upon the evidence submitted, the court does find that the defendant's earning capacity is equivalent to his salary at the time of his separation from the Albert Schweitzer Institute, which is $125,000.00 per annum. After consideration of the evidence offered at trial, the argument and written claims for relief of the parties and the relevant statutory criteria, the court enters the following orders:
A child-support order shall enter in the amount of $396.00 per week. The court finds an arrearage of the existing orders in the amount of $56,050.00, which arrears shall continue due and owing. The court orders alimony to the plaintiff in the amount of $1.00 per year, modifiable only upon her incapacity or inability to work, a substantial increase in the earnings of the defendant, or in the event that the Albert Schweitzer "collection" is found to be the property of either of these parties and it's value at sale is substantially in excess of $100,000.00. The defendant shall disclose his employment and earnings to the plaintiff in written form on July 01 and January 01 of each year.
The issue of visitation is problematic in that there is an allegation against the defendant of inappropriate behavior towards a minor at the Choate School. Perhaps more disturbing is an allegation that there may have been some inappropriate behavior with his own daughter. However, that having been said, the defendant has since visited his daughter and the daughter's response was generally positive. The court is compelled by the recommendation of the attorney for the minor child. Accordingly, the court orders sole custody to the plaintiff mother. The court does grant reasonable rights of visitation as to the minor children, with that visitation to take place upon a minimum of CT Page 2039 (96) hours notice to the plaintiff. Said visitation will also require that an itinerary be provided, and that the children not be removed from the State of Connecticut without either the written permission of the plaintiff or an order from this court. As to visitation with the minor child Julie, the court orders that as a condition precedent to visitation, the father is to contact the child's therapist and to cooperate to whatever extent required by the therapist in addressing the issues raised by either the child or the therapist with respect to the visitation. In addition to the above, the court orders that the defendant be allowed to contact the children through "e-mail" as he deems appropriate, and in addition, the parties shall establish a regular schedule of weekly phone conferences so that Mr. Robles may continue to maintain contact with the minor children. The plaintiff shall endeavor to have the children respond in a reasonable and timely manner to the e-mail communications of the father. The plaintiff shall also endeavor to have the children available for weekly phone calls from Mr. Robles. At this time, the court declines to enter an order allowing for visitation outside of the State of Connecticut and outside of the United States.
The plaintiff shall be the sole owner of the real estate located at 38 Lydale Place, Meriden, free of any claim or interest of the defendant. The plaintiff shall be responsible for any and all debts, mortgages, taxes and maintenance associated with that property. The plaintiff shall have exclusive ownership of the 1996 Ford Explorer listed on her financial affidavit. The plaintiff shall be awarded sole ownership of the following assets: New Haven Savings Bank account with an approximate balance of $1,000.00; a Kemper Life Insurance Policy in the face amount of $150,000.00; a IDS Universal Life Insurance Policy in the name of Harold Robles in the amount of $200,000.00; a Indiana Life Insurance Policy in the name of Harold Robles in the face amount of $300,000.00. Ownership of those policies shall include ownership of the cash value associated with them. The defendant shall maintain the said IDS Life Insurance Policy in effect for the benefit of the minor children until the youngest reaches the age of majority and he shall name the plaintiff the beneficiary of that policy in trust for the minor children. The plaintiff shall further be awarded ownership of the IDS 403B — Flexible Annuity in the amount of $20,669.00; and the IDS IRA's listed on her financial affidavit in the amount of $2,187.00; and $3,490.00.00 respectively. The plaintiff shall be awarded ownership of any and all furniture and household items presently CT Page 2040 located at 38 Lydale Place, Meriden, except as specified below. To the extent that any funds remain from the proceeds of the real estate known as 427 Williams Road in Wallingford, those proceeds shall be the property of the plaintiff.
The plaintiff shall maintain medical insurance for the benefit of the minor children as available through her employment at reasonable cost. The parties shall divide equally the cost of any uninsured and/or unreimbursed medical, opthamologic, dental, pharmaceutical, orthodontic, psychological or psychiatric expenses for the minor children. The wife shall be entitled to claim both children as dependents for income tax purposes.
The plaintiff shall retain possession of all the personal property presently located in the former marital residence. As to the items listed on plaintiff's Exhibit No. 9, the plaintiff shall retain possession of all those items except for the items listed as Number 8, 12, 15, 16, 17, 21, 23, 24, which shall be the property of the defendant.
Each party shall be responsible for their own counsel fees and the parties shall be equally responsible for the counsel fees incurred by and on behalf of the attorney for the minor child. The parties shall pay the debts listed on their respective financial affidavits, with the exception of the debts to Attorney Richard Gee and the Connecticut Children's Hospital which shall be paid by the defendant. The parties shall indemnify and hold each other harmless as to these orders.
The court is aware of a dispute between these parties as to the ownership of items described as the Albert Schweitzer collection. As to that collection, the testimony is that the bulk of it is located at the Choate School. The collection consists of a large number of books in different languages, an organ which was the property of Albert Schweitzer's nurse and was played by Schweitzer, stamps from a number of countries honoring Schweitzer, letters, manuscripts, newspapers, movies, newsreels, concert records, and other objects related to Albert Schweitzer. The plaintiff describes the value as approximately $100,000.00. The parties agree that the value has been described in vastly different amounts, at different times, by different people. There was no expert information or appraisal. Based upon the limited information offered at trial as to the value of the collection, the court finds it's value to be $100,000.00. There is a motion to intervene in this action which was brought by the Albert CT Page 2041 Schweitzer Institute for the Humanities, Inc. This motion was previously heard and denied by the court (McLachlan, J.). The motion indicates that there is a dispute outside of this action as to the ownership of the Albert Schweitzer collection, which dispute remains unresolved at this time. The court shall enter an order as to the disposition of the collection. However, nothing in this court's order shall be interpreted to be an opinion as to the issue of ownership of the items listed in the collection. Should a Court order that the Albert Schweitzer collection be deemed the property of these parties, or either of them, the collection shall be conveyed to the defendant, Harold Robles. The collection shall be sold, and any unpaid arrears as to pendente lite alimony, child-support, counsel fees for the attorney for the minor children, or any outstanding obligations pursuant to this judgment at the time of sale shall be satisfied from the proceeds of that sale.
The obligations imposed by the terms of this judgment are intended to be spousal support, and accordingly, should not be discharged in bankruptcy.
Robaina, J.